Moyer, C.J.,
dissenting.
{¶ 33} I respectfully dissent from the majority’s conclusion that the Public Utilities Commission lacked the authority to make an order ending Monongahela Power’s (“Mon Power’s”) market-development period (“MDP”) as to its large commercial and industrial customers on December 31, 2003. The commission had the authority, pursuant to R.C. 4928.40, to make such an order and did in fact make such an order when it approved the Stipulation and Recommendation (“the Stipulation”) in its October 5, 2000 Opinion and Order (the “ETP Order”).
{¶ 34} Compliance with R.C. 4928.40(B)(2)[2] is required before a utility company’s MDP can be terminated prior to December 31, 2005. As the majority states, “That statutory provision contains four steps: (1) an application by the electric utility to shorten the MDP; (2) a demonstration by the utility that (a) there is a 20 percent switching rate of the utility’s load by the customer class or (b) effective competition exists in the utility’s service territory; (3) based on the utility’s demonstration, a commission finding of the requisite switching rate or effective competition; and (4) based on such finding, a commission order authorizing a shortened MDP.”
{¶ 35} The majority finds that Mon Power took the first step[3] but ultimately concludes that the other three steps were not taken and in fact could not have been taken in the instant case. According to the majority, “There is nothing in the Stipulation or in the ETP Order indicating that Mon Power made a showing of the existence of the requisite competition * * Moreover, the majority reasons that Mon Power could not have demonstrated the existence of effective competition because the ETP Order was issued before the starting date of *580 competitive retail electric service,[4] at a time when the certified-territory law — a law that outlawed competition and customer switching — was in effect.
{¶ 36} However, in reaching this conclusion, the majority fails to account for the explanation of “effective competition” that is set forth in R.C. 4928.40(A). R.C. 4928.40(A) provides:
{¶ 37} “Factors the commission shall consider in prescribing the expiration date of the utility’s market development period and the transition charge for each customer class and rate schedule of the utility include, but are not limited to, the total allowable amount of transition costs of the electric utility as determined under section 4928.39 of the Revised Code; the relevant market price for the delivered supply of electricity to customers in that customer class and, to the extent possible, in each rate schedule as determined by the commission; and such shopping incentives by customer class as are considered necessary to induce, at the minimum, a twenty per cent load switching rate by customer class halfway through the utility’s market development period but not later than December 31, 2003.”
{¶ 38} The three factors enumerated in R.C. 4928.40(A) provide guidance as to what constitutes “effective competition.” Significantly, each of these factors is capable of determination before the starting date of competitive retail electric service. Moreover, two of the factors — transition costs and shopping incentives— must be addressed in the utility’s transition plan. See R.C. 4928.34(A)(12); R.C. 4928.37(A)(1); Ohio Adm.Code 4901:1-20-03.
{¶ 39} Thus, R.C. 4928.40(A) negates the conclusion that a demonstration of effective competition cannot be made before the starting date of competitive retail electric service. Pursuant to R.C. 4928.40(A), a utility need not wait for the MDP to produce desired competitive results; rather, the utility can demonstrate the existence of effective competition by showing that a supporting framework for competition is in place. This demonstration can be made as part of the utility’s transition plan. Therefore, the commission has the authority to prospectively end the MDP at the time it approves the utility’s transition plan and to do so based on the utility’s inclusion of a framework for competition in the transition plan.
{¶ 40} In the instant case, Mon Power demonstrated that effective competition, as that term is defined in R.C. 4928.40(A), existed in its certified territory. Section IV of the Stipulation states that the basis for Mon Power’s application for termination of the MDP as of December 31, 2003, was its “agreement to forego the recovery of transition costs beyond that date.” The “total allowable -amount *581 of transition costs” is one of the factors set forth in R.C. 4928.40(A) that the commission is required to consider in determining whether effective competition exists in the utility’s certified territory. Thus, R.C. 4928.40(A) directly supports the proposal in the Stipulation that the early end of the MDP be authorized based on Mon Power’s agreement to forgo transition costs.
{¶ 41} Next, the commission met the third requirement of 4928.40(B)(2) and found that effective competition existed in Mon Power’s certified territory. In the ETP Order, the commission recognized that the Stipulation altered Mon Power’s transition plan by terminating both the MDP and regulatory-transition charges for Mon Power’s industrial and large commercial customers as of December 31, 2003. The commission also acknowledged that the Stipulation “substantially reduces the amount of regulatory assets that the company will recover through its RTC [regulatory transition charge].”
{¶ 42} After making these acknowledgments, the commission, in a section of the ETP Order entitled “Findings of Fact and Conclusions of Law,” found, “The company’s transition plan, as modified by the Stipulation, satisfies the requirements of S.B. 3,” which includes R.C. 4928.40(B)(2). By finding that the Stipulation complied with the relevant statutory provisions, the commission found that Mon Power’s agreement to forgo recovery transition costs, as set forth in the Stipulation, was a sufficient basis for prescribing an early end to the MDP.
{¶ 43} Finally, the ETP Order states that “[Mon Power’s] transition plan and Stipulation filed on January 3, 2000, and June 22, 2000, are approved to the extent set forth in this Opinion and Order.” By approving the Stipulation, the commission approved Mon Power’s application in Section TV of the Stipulation to terminate the MDP for certain of its customer classes on December 31, 2003. Therefore, the issuance of the ETP order satisfied the fourth requirement of R.C. 4928.40(B)(2).
{¶ 44} Because the requirements set forth in R.C. 4928.40(B)(2) were satisfied, I would hold that the commission authorized the early termination of Mon Power’s MDP with respect to its large commercial and industrial customers as part of the ETP Order.

. {¶ a} R.C. 4928.40(B)(2) provides:
{¶ b} “For purposes of this chapter, the market development period shall not end earlier than December 31, 2005, unless, upon application by an electric utility, the commission issues an order authorizing such earlier date for one or more customer classes as is specified in the order, upon a demonstration by the utility and a finding by the commission of either of the following:
{¶ c} “(a) There is a twenty per cent switching rate of the utility’s load by the customer class.
{¶ d} “(b) Effective competition exists in the utility’s certified territory.”

. Mon Power applied to the commission for approval of a shortened MDP in Section IV of the Stipulation. That section provides: “By this Stipulation, Monongahela Power, supported by the other Signatory Parties, applies to the Commission for authorization of a market development period termination date for industrials and large commercial customers of December 31, 2003, based upon the agreement to forego the recovery of transition costs beyond that date (see Ohio Revised Code § 4928.38).”

. R.C. 4928.01(A)(29) provides that the “ ‘[smarting date of competitive retail electric service’ means January 1, 2001, except as provided in division (C) of this section.” This date marks the beginning of the MDP. See R.C. 4928.01(A)(17).